**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

DENNIS J. MILLS,

                                        Plaintiff,

            v.                                                    No. 11-CV-896
                                                                        (DNH/CFH)
BRIAN FISCHER, Commissioner, DOCS;
K. NORCROSS, A.S.A.T., Counselor; D. DRAKE,
A.S.A.T., Counselor; MR. STACEY, A.S.A.T.,
Counselor; MS. LANGLIAS, A.S.A.T., Counselor;
CHRIS LIBERTY, Senior Counselor/
Programs/TAC Committee,

                                        Defendants.[1]

_____

**APPEARANCES:**                              **OF COUNSEL:**


DENNIS J. MILLS
Plaintiff Pro Se
2571 School Street, Apt. A
Attica, New York 14011

HON. ERIC T. SCHNEIDERMAN              MICHAEL G. McCARTIN, ESQ.
Attorney General for the                        Assistant Attorney General
   State of New York
Attorney for Defendant
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

                    **REPORT-RECOMMENDATION AND ORDER**[2]

_____

        [1]The New York State Department of Correctional Services merged with the Division
of Parole and is now the New York State Department of Corrections and Community
Supervision.  Further, in their acknowledgments of receipt of summons and complaint,
"Stacey" is spelled "Staley" and "Langlias" is spelled "Langlais."  See Dkt. Nos. 12, 14.
The Court refers to both defendants by the latter spellings.

        [2]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Plaintiff pro se Dennis J. Mills ("Mills"), formerly an inmate in the custody of the New York State Department of Correctional and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, six officials and employees of DOCCS, violated his constitutional rights under the Fifth and Fourteenth Amendments. Compl. (Dkt. No. 1). Presently pending are defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56 and Mills's motion for appointment of counsel. Dkt. Nos. 32, 43. Mills opposes the motion for summary judgment.[3] Pl.'s Resp. (Dkt. No. 44). For the reasons that follow, it is recommended that defendants' motion for summary judgment be granted and Mills's motion for appointment of counsel be denied.

## I. Background

The facts are related in the light most favorable to Mills as the non-moving party. See subsection II(A) infra. All of the relevant events occurred during Mills's incarceration at the Clinton Correctional Facility ("Clinton").

## A. Alcohol Abuse and Criminal History

Mills has a criminal history related to alcohol use. Mills was convicted twice for Driving While Intoxicated ("DWI") and twice for Driving While Ability Impaired ("DWAI"). Mills Dep. (Dkt. No. 32-3) at 11. He contested one DWI and one DWAI. Id. As a result of

---

[3] In his motion for appointment of counsel, Mills submitted charts documenting the number of hours spent on treatment classes from June 2012 through August 2012. Dkt. No. 43 at 4–6. Mills also alleged additional claims against defendants, including malicious prosecution and fraud. Id. at 1–3. Both the charts and additional claims are considered in this Report-Recommendation.

these convictions, Mills underwent outpatient treatment programs at Office of Alcoholism and Substance Abuse Services ("OASAS") facilities, the first time in June 2008 at an Allegany County Facility and the second time in May 2009 at a Wyoming County Facility. Id. at 16–18. According to Mills, because his alcohol use was "not that severe," he was only required to participate in the first of three phases of the treatment program at each OASAS facility. Id. at 18–19. Mills also previously participated in Alcoholics Anonymous ("AA") meetings. Id. at 20–21. In addition to the alcohol-related convictions, Mills was convicted of petty larceny at the age of seventeen. Id. at 11. Mills does not consider himself an alcoholic and attributed his criminal conduct to his domestic and employment troubles. Id. at 44–46, 64–65.

## B. ASAT Programming

The Alcohol and Substance Abuse Treatment ("ASAT") program is a therapeutic alcohol and substance abuse education and treatment program that is offered to inmates based upon their criminal history. See Drake Decl. (Dkt. No. 32-4) ¶¶ 1, 4; Norcross Decl. (Dkt. No. 32-6) ¶¶ 1, 4; Liberty Decl. (Dkt. No. 32-9) ¶¶ 1, 4. Inmates are not forced to undergo the ASAT program; however, an inmate who refuses to take it would not be released from custody on his conditional release date. Mills Dep. at 52; Drake Decl. ¶ 5; Norcross Decl. ¶ 5; Liberty Decl. ¶ 5.

Around October 2010, upon his transfer to Clinton, Mills was offered a placement in the ASAT program and began participating on or around December 17, 2010. Mills Dep. at 26. Initially, Mills objected to his participation because he felt that he did not require it. Id. 23–24. Ultimately, Mills chose to participate in the program in order to be released on his

3

conditional release date of August 17, 2012.[4]  Id. at 23–24, 42, 52.  By letters, Mills

informed Fischer that DOCCS was subjecting him to double jeopardy by forcing him to

attend the ASAT program; however, Fischer never responded.  Pl.'s Resp. ¶ I, at 12.

On December 29, 2010, Mills met with defendant Norcross to complete initiation forms.

Mills Dep. at 27–28.  Norcross "started writing down answers to the questions himself"

because Mills took too long providing his answers than Norcross preferred to wait.  Id. at

28.  Mills disagreed with the answers Norcross provided on his behalf and refused to sign

the forms.  Id. at 28, 33; Dkt. Nos. 32-5 at 1, 32-8 at 1.  On December 31, 2010, as a result

of his alleged non-compliance, Mills was referred to the Treatment Plan Review Committee

("TPRC") and placed on probation for sixty days, from December 31, 2010 through

February 28, 2011.  Dkt. Nos. 32-5 at 1, 32-8 at 1.  Eventually, in an effort to remain in the

ASAT program, Mills "wrote" his signature but did not "sign" his signature on the initiation

forms.  Mills Dep. at 34–35.

On January 13, 2011, Norcross asked Mills to re-submit a homework assignment

because Norcross felt the initial submission was unsatisfactory.  Dkt. No. 32-8 at 1.  On

January 25, 2011, Norcross received a note from Mills stating that he would not re-submit

the assignment but that Norcross could complete it on his behalf and he would sign it.  Id.

On that same day, defendant Drake interviewed Mills, upon Mills's written request, at which

time Mills verbally attacked Norcross, expressing anger over having to repeat the

_____

[4]  In his deposition, Mills claimed that his conditional release date was August 17,
2011.  Mills. Dep. at 42.  However, DOCCS's inmate information database states that
Mills's conditional release date was August 17, 2012.  See DOCCS, INMATE INFORMATION,
IDENTIFYING AND LOCATION INFORMATION,
http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ1/WINQ000 (lasted visited Dec. 26,
2012).

4

mandatory homework assignment.  Id. at 1–2.  Subsequently, Norcross referred Mills to the

TPRC for Mills's refusal to comply with staff instructions and ASAT program rules as well as

Mills's continued disrespect toward ASAT staff.  Id.

On January 27, 2011, during an ASAT group session where forty-five inmates were

watching a video on marijuana, Mills addressed the inmates with regard to the video,

stating, "[y]ou don't have to listen to what these people are saying."  Mills Dep. at 37–38.

Mills continued, "[y]ou all have to pick and choose what you need to do to conquer your

addictions."  Id. at 39.  Mills explained that Drake mistakenly thought he was speaking to

and about her.  Id.  Drake pulled Mills out of group session and forced him sign a piece of

paper stating that he was given an offender notice.  Id.  Mills attempted to explain that his

comment was directed at the video but the counselors told him, "they heard enough."  Id. at

40.  Mills wanted to explain to the class that, "[i]f you have a drug issue, this [video] may be

for you, but it all depends on the drug that you're on."  Id. at 41.  Mills received an Inmate

Counseling Notification for making remarks that discredited and undermined ASAT staff,

disrupting the group, and inciting other inmates.  Dkt. No. 32-5 at 1.


### C.  TPRC Review and Appeals

On January 28, 2011, the TPRC hearing took place with defendants Norcross, Langlais,

Staley, Liberty, and non-party Sergeant King.  Dkt. No. 32-8 at 3.  Mills alleged that at the

TPRC hearing, he was deprived of the opportunity to present his defense, specifically, to

call witnesses, cross-examine witnesses, and introduce evidence.  Compl. at 6.  Mills

alleged that evidence under seal was improperly introduced at the hearing.[5]  Id.  The TPRC

unanimously voted to discharge Mills from the ASAT program.  Dkt. No. 32-8 at 3.  Mills

was prevented from re-applying for the ASAT program until February 28, 2011.  Dkt. No.

32-5 at 1.

Mills appealed the disposition of the TPRC hearing, which was affirmed by the

superintendent.[6]  Compl. at 6.  Mills appealed that decision to the Central Office Review

Committee ("CORC") and alleged that, as of July 20, 2011, he had yet to receive a CORC

disposition.  Id.  As a result of his removal from ASAT, Mills was not released on his

conditional release date.  Mills Dep. at 15, 42.  Mills alleged that he was wrongfully removed

based on false accusations with regard to disciplinary issues as well as retaliation for the

filing of grievances against the ASAT staff.  Compl. at 6; Mills Dep. at 56–57.

According to defendants, Mills was removed from ASAT because:  (1) Mills did not

properly complete ASAT orientation paperwork; (2) Mills was placed on probation for sixty

days because of such failure; (3) on January 20, 2011, Mills refused to complete a

mandatory homework assignment; (4) on January 25, 2011, Mills verbally attacked ASAT

staff; (5) on January 25, 2011, Mills received another TPRC referral for failure to comply

with staff instructions and ASAT program rules, and continued disrespect towards ASAT

---

[5]  N.Y. CRIM. PROC. LAW § 160.50 provides that where "the termination of a criminal action or proceeding against a person [is] in favor of such person," then absent the district attorney's objection by motion, "the record of such action or proceeding shall be sealed. . . ."  Id. ¶ 1.

[6]  The DOCCS "IGP [Inmate Grievance Program] is a three-step process that requires an inmate to:  (1) file a grievance with the IGRC [Inmate Grievance Resolution Committee]; (2) appeal to the superintendent within four working days of receiving the IGRC's written response; and (3) appeal to the CORC [Central Office Review Committee] . . . within four working days of receipt of the superintendent's written response."  Abney v. McGinnis, 380 F.3d 663, 668 (2d Cir. 2004) (internal citations omitted).

staff; and (6) on January 27, 2011, Mills received two Inmate Counseling Notifications, one regarding a cell inspection, and another Mills's statement made during the group session. Drake Decl. ¶ 7; Norcross Decl. ¶ 6; Liberty Decl. ¶ 6. Further, Sergeant King expressed concern over Mills's statement at the group session because it "angered inmates and caused a safety and security threat to the faculty." DKt. No. 32-8 at 3. This action followed.[7]

---

[7] Throughout his deposition, motion for appointment of counsel, and response to the instant motion, Mills made several statements in an attempt to allege additional potential claims. However, these potential claims must fail as a matter of law.

First, Mills attempted to make an excessive force claim under the Eighth Amendment by contending that the Sergeant could have known about his altercation with Norcross and instruct other DOCCS employees to assault him. Mills Dep. at 31–32. While an inmate enjoys an Eighth Amendment protection against the use of excessive force, he must establish both objective and subjective elements—that he suffered a sufficiently serious injury and the defendants' use of force was malicious or wanton. Hudson v. McMillian, 503 U.S. 1, 9–10 (1992); Sims v. Artuz, 230 F.3d 14, 21 (2d Cir. 2000). Here, Mills conceded that defendants did not assault him. Mills Dep. at 32. Further, no sergeant was named a defendant in this action. Moreover, because the record is devoid of any evidence supporting both the objective and subjective prongs, such a speculative allegation cannot survive a motion for summary judgment. See McPherson v. N.Y. City Dep't of Educ., 457 F.3d 211, 215 n. 4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment."). Thus, Mills has failed to allege an excessive force claim.

Second, Mills attempted to allege a retaliation claim under the First Amendment by contending that defendants removed him from the ASAT program in retaliation for his filing of grievances against them. Mills Dep. at 56–57. As discussed in subsection II(C)(3) infra, Mills has also failed to allege such a claim.

Third, Mills attempted to state a failure to protect claim under the Eighth Amendment against Liberty by claiming that Liberty placed him in danger because Liberty asked for his deoxyribonucleic acid ("DNA") sample in the presence of other inmates, leading the other inmates to believe Mills was convicted of a sexually violent crime which would subject him to violent acts in prison. Mills Dep. at 60. Prison officials are required by the Eighth Amendment to take reasonable measures to guarantee the safety of inmates in their custody. Farmer v. Brennan, 511 U.S. 825, 833 (1994). Further, "[p]rison officials have a duty to protect prisoners from violent attacks by other inmates." Id. at 832–33. To successfully allege a failure to protect claim, an inmate "must establish both that a substantial risk to his safety actually existed and that the offending prison officials knew of and consciously disregarded that risk." Id. at 834, 837–39. Here, Mills merely speculated that Liberty's request for his DNA would expose him to the risk of inmate

## II. Discussion

Mills alleged that defendants violated his due process rights under the Fourteenth Amendment because they: (1) coerced him to take the ASAT program; (2) wrongfully removed him from the ASAT program; (3) both denied him the opportunity to present his defense and considered improper evidence during the TPRC discharge hearing; and (4) used false accusations against him at the TPRC hearing.[8] Mills also alleged that his Fifth

_____

violence. There is nothing in the record indicating that Mills's safety was subjected to a substantial risk or that Liberty had knowledge of that substantial risk to which Mills would be subjected to by requesting for DNA samples. Further, Mills does not provide any support linking the request for DNA samples to a sexual assault conviction. Thus, Mills has failed to allege a failure to protect claim.

Finally, in his motion for appointment of counsel, Mills made a claim of malicious prosecution against defendants for his placement in the ASAT program and a fraud claim against defendants for failing to follow the treatment requirements as set forth in the 2011 ASAT Operations Manual, which according to Mills, required the ASAT staff to provide each inmate a minimum of twelve hours of treatment each week. Dkt. No. 43 ¶¶ 4–5. Neither claim survives this motion for summary judgment. First, a claim of malicious prosecution brought under the Fourth Amendment pursuant to § 1983 is "substantially the same" as if it was brought under state law. Allen v. City of New York, 480 F. Supp. 2d 689, 712 (S.D.N.Y. 2007) (citing Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003)). Under New York law, a claim of malicious prosecution requires a plaintiff to show that: "(1) the defendant commenced or continued a criminal proceeding against plaintiff; (2) the proceeding was terminated in favor of the plaintiff; (3) there was no probable cause for the proceeding; and (4) the proceeding was instituted with malice." Id. at 712 (citing Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003)). The deprivation of liberty in a malicious prosecution claim "must have been effected 'pursuant to legal process.'" Singer v. Fulton County Sheriff, 63 F.3d 110, 116–17 (2d Cir. 1995) (citing Heck v. Humphrey, 512 U.S. 477, 484 (1994)). Here, the record belies Mills's claim that he was subjected to malicious prosecution for his placement in ASAT did not involve a criminal proceeding or any legal process. Rather, Mills's placement in ASAT required his consent. Thus, Mills has failed to allege a claim of malicious prosecution.

As for the fraud claim, this Court may decline to address the pendent state law claim because, as discussed infra, there are grounds supporting the dismissal of Mills's federal claims. Cusamano v. Sobek, 604 F. Supp. 2d 416, 487 n. 157 (N.D.N.Y. 2009) (collecting cases).

Accordingly, these potential claims must fail as a matter of law.

[8] Mills also characterized the alleged forced participation in ASAT as an Equal Protection claim. Pl.'s Resp. ¶ II. The Fourteenth Amendment's Equal Protection Clause

Amendment right against double jeopardy was violated when he was placed in the ASAT program. Mills Dep. at 51–52, 54–60. Mills seeks monetary and punitive damages. Compl. at 2–3, 7.

Defendants contend: (1) Fischer should be dismissed from this action because Mills made no allegations of wrongdoing on Fischer's part in the complaint; (2) Mills's claim that he was forced to take the ASAT program should be dismissed because prisoner officials have broad discretion in determining the program needs of inmates; (3) Mills's due process claim based on his removal from ASAT should be dismissed because Mills does not have a liberty interest in either being allowed to participate in ASAT or released from custody on his conditional release date; and (4) Mills failed to state a valid double-jeopardy claim. Defendants also contend in the alterative that they are entitled to qualified immunity.

## A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any

---

mandates equal treatment under the law. Essential to that protection is the guarantee that similarly situated persons be treated equally. City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). In order to establish an equal protection violation, the plaintiff must show that "the disparity in treatment cannot survive the appropriate level of scrutiny which, in the prison setting, means that he must demonstrate that his treatment was not reasonably related to any legitimate penological interests." Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005). Liberally construing Mills's allegations, Mills contends that inmates such as he who were required to participate in ASAT because of the possibility that they may relapse are treated differently from other inmates who do not have to repeat the ASAT program. Pl.'s Resp. ¶ II. A rational basis exists, however, for requiring inmates with histories of addiction to repeat treatment programs for such inmates have a greater likelihood of relapse than do those without that history. This is especially in light of the fact that Mills was incarcerated for DWI and DWAI. ASAT serves to deter such relapses. Accordingly, because a rational basis exists for the differences in assignment of treatment as challenged by Mills, Mills's equal protection claim should be dismissed.

material fact if supported by affidavits or other suitable evidence and the moving party is

entitled to judgment as a matter of law. The moving party has the burden to show the

absence of disputed material facts by informing the court of portions of pleadings,

depositions, and affidavits which support the motion. Fed. R. Civ. P. 56(c); Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the

case as determined by substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248

(1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the

non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue

for trial. The non-moving party must do more than merely show that there is some doubt or

speculation as to the true nature of the facts. Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could

find in favor of the non-moving party for a court to grant a motion for summary judgment.

Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223–24 (2d Cir. 1994); Graham v.

Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks judgment against a pro se litigant, a court must afford the

non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471,

477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se
> litigant is entitled to "special solicitude," . . . that a pro se litigant's
> submissions must be construed "liberally,". . . and that such
> submissions must be read to raise the strongest arguments that
> they "suggest," . . . . At the same time, our cases have also
> indicated that we cannot read into pro se submissions claims
> that are not "consistent" with the pro se litigant's allegations, . . .
> or arguments that the submissions themselves do not "suggest,"
> . . . that we should not "excuse frivolous or vexatious filings by

> pro se litigants," . . . and that pro se status "does not exempt a
> party from compliance with relevant rules of procedural and
> substantive law . . . ."

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, 537

F.3d 185, 191–92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded

district courts that 'when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his

pleadings liberally.'" (citations omitted)).  However, the mere existence of some alleged

factual dispute between the parties will not defeat an otherwise properly supported motion;

the requirement is that there be no genuine issue of material fact.  Anderson, 477 U.S. at

247–48.


### B.  Personal Involvement

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a

prerequisite to an award of damages under § 1983.'"  Wright v. Smith, 21 F.3d 496, 501 (2d

Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus,

supervisory officials may not be held liable merely because they held a position of authority.

Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may

be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged
> constitutional violation;
>
> (2) the defendant, after being informed of the violation through a
> report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which
> unconstitutional practices occurred, or allowed the continuance
> of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising

11

> subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).[9]

Here, Fischer must be dismissed from Mills's complaint. First, Mills contends that Fischer was informed of the alleged constitutional violations through letters he had addressed to Fischer. Merely writing letters and grievances to a defendant is insufficient to establish notice and personal involvement. Smart v. Goord, 441 F. Supp. 2d 631, 643 (S.D.N.Y. 2006) ("Commissioner . . . cannot be held liable on the sole basis that he did not act in response to letters of protest sent by [plaintiff] . . . ."). Similarly, receipt of a letter or grievance, without personally investigating or acting on the letter or grievance, is insufficient to establish personal involvement. See, e.g., Rivera v. Fischer, 655 F. Supp. 2d 235, 238 (W.D.N.Y. 2009) (citing cases); Boddie v. Morgenthau, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) ("While mere receipt of a letter from a prisoner is insufficient to establish individual liability . . . [p]ersonal involvement will be found . . . where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint."). Thus, Mills has failed to establish Fischer's personal involvement based on

---

[9] Various courts in the Second Circuit have postulated how, if at all, the Iqbal decision affected the five Colon factors which were traditionally used to determine personal involvement. Pearce v. Estate of Longo, 766 F. Supp. 2d 367, 376 (N.D.N.Y. 2011), rev'd in part on other grounds sub nom., Pearce v. Labella, 473 F. App'x 16 (2d Cir. 2012) (recognizing that several district courts in the Second Circuit have debated Iqbal's impact on the five Colon factors); Kleehammer v. Monroe Cnty., 743 F. Supp. 2d 175 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third Colon categories pass Iqbal's muster . . . ."); D'Olimpio v. Crisafi, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (disagreeing that Iqbal eliminated Colon's personal involvement standard).

the letters.

Mills also contends that Fischer was personally involved in the alleged violations by failing to supervise the defendants. Pl.'s Resp. ¶ I, at 21. However, general and conclusory allegations about negligent supervision are insufficient to establish personal involvement. Moreover, a "mere linkage in the prison chain of command is insufficient to implicate" a defendant's personal involvement. Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003) (internal citations omitted). As Mills has proffered no facts to establish that Fischer had knowledge, investigated, or otherwise participated in decision-making, policy-making or training regarding the alleged constitutional violations, Mills has failed to establish the personal involvement of Fischer. Accordingly, defendants' motion on this ground should be granted.

## C. Fourteenth Amendment

### 1. Substantive Due Process

Mills alleged that defendants' actions caused him to be discharged from ASAT and effectively extended the length of his incarceration. As a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. See Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001). To establish a protected liberty interest, a prisoner must satisfy the standard set forth in Sandin v. Conner, 515 U.S. 472, 483–84 (1995). This standard requires a prisoner to establish that the deprivation was atypical and significant in relation to ordinary prison life. Id. at 484; Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996).

### i. ASAT Placement

Mills's contention that his placement in ASAT violated his due process rights under the

Fourteenth Amendment rights is without merit.

> It is the policy of the Department of Correctional Services to recommend [ASAT] programming for all inmates with a history of alcohol or drug abuse. Although previous policy informally exempted inmates who demonstrated a period of abstinence of 10 years or more, the current policy provides no such relief because of evidence that individuals with a history of drug or alcohol abuse can readily relapse even after many years of abstinence.

Rodriguez v. Goord, 50 A.D.3d 1328, 1328 (3d Dep't 2008); see also Gomez v. Goord, 34

A.D.3d 963, 964 (3d Dep't 2006) (explaining that the ASAT program gives staff "the

authority to refer inmates . . . based on institutional records or self-reports indicating alcohol

. . . abuse," and deferring to DOCCS's "considerable discretion in determining the program

needs of inmates . . . ." (internal quotation marks omitted)).  As indicated, both by case law

and defendants' affidavits, DOCCS policy allows and encourages referral of any inmate with

a history of substance abuse to undergo treatment while incarcerated.  Both Mills's criminal

and personal history made him a candidate for the program under DOCCS guidelines.

Thus, it is beyond question that under DOCCS Policy, Mills was appropriately assigned into

the program.  The Supreme Court has held that "[a] prison clinical rehabilitation program,

which is acknowledged to bear a rational relation to a legitimate penological objective, does

not . . .  constitute [an] atypical and significant hardship[ ] in relation to the ordinary incidents

of prison life."  McKune v. Lile, 536 U.S. 24, 37–38 (2002).  "Since 'most offenders will

eventually return to society, [a] paramount objective of the corrections system is the

rehabilitation of those committed to its custody.'"  Id. at 36 (quoting Pell v. Procunier, 417

U.S. 817, 823 (1974)).  To the extent that Mills contends his prior treatment exempts him from ASAT, such contentions are meritless because DOCCS has discretion to recommend treatment to inmates.  Further, there is a high probability that Mills would relapse even after a period of sobriety especially in light of Mills's self reports of continued personal turmoil during his deposition with respect his marriage and a lawsuit against his business.[10]  Mills Dep. at 45–46.  Therefore, Mills has failed to allege a due process deprivation based on his placement in the ASAT program.  It is also noteworthy and undisputed that Mills entered the program in an attempt to reap its benefits.  Accordingly, defendants' motion on this ground should be granted.

### ii.  Removal From ASAT Programming

It is undisputed that inmates have no constitutionally protected interest in parole, or other conditional release from prison, prior to the expiration of a valid sentence.  Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7 (1979).  Inmates do not have a constitutionally protected liberty interest in internal classifications or eligibility for rehabilitative programs.  See Pugliese v. Nelson, 617 F.2d 916, 923 (2d Cir. 1980).

Additionally, the Second Circuit has concluded that inmates have "no constitutional right to discretionary good time release, or to participation in prison programs which might expedite release."  Fifield v. Eaton, 669 F. Supp. 2d 294, 297 (W.D.N.Y. 2009) (citations

---

[10]  Mills also asserts that the defendants failed to follow their own DOCCS policies and procedures.  This is insufficient to state a constitutional claim.  Bolden v. Alston, 810 F.2d 353, 358 (2d Cir. 1987) ("State procedural requirements do not establish federal constitutional rights. . . . At most, any violation of state procedural requirements would create liability under state law . . . ." (citations omitted).).

omitted); see also Abed v. Armstrong, 209 F.3d 63, 66–67 (2d Cir. 2000) ("Although inmates have a liberty interest in good time credits they have already earned, . . . no such interest has been recognized in the opportunity to earn good time credit where, as here, prison officials have discretion to determine whether an inmate . . . is eligible to earn good time credit." (citations omitted)); N.Y. Correct. Law § 803(a) (explaining that inmates may receive credit to reduce their sentence for "good behavior and efficient and willing performance . . . in an assigned treatment program [but] . . . may [also have such credits] be withheld, forfeited or canceled in whole or in part for . . . failure to perform properly in the . . . program assigned."). Thus, to the extent the complaint seeks compensation due to Mills's presumed inability to accumulate good time credits after his removal from the ASAT program, release from custody on his conditional release date, and an expedited re-enrollment in the ASAT program, such allegations are insufficient to survive summary judgment. Fifield, 669 F. Supp. 2d at 297 ("Accordingly, plaintiff's due process claim relating to lost opportunities to earn good time credits must be dismissed."); Harrison v. Fischer, No. 08-CV-1327 (NAM/DRH), 2010 WL 2653629, at *9 (N.D.N.Y. June 7, 2010) (Dkt. No. 32-12) at 71 (concluding that inmates are not guaranteed enrollment in special programs or early release). Accordingly, defendants' motion on this ground should be granted.

### 2. Procedural Due Process

Mills contend that he should have been afforded procedural due process during the TPRC hearing, specifically, the opportunity to call witnesses and present documentary evidence. "Procedural due process claims concern the adequacy of the procedures

16

provided by the governmental body for the protection of liberty or property rights of an individual." Gordon v. Nicoletti, 84 F. Supp. 2d 304, 308 (D. Conn. 2000). However, to state a claim for procedural due process, there must first be a substantive due process interest which requires protection. See generally Valmonte v. Bane, 18 F.3d 992, 998 (2d Cir. 1994) ("[P]rocedural due process questions [are analyzed] in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.") (citing Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989)). As previously discussed, there is no protected liberty interest in both the placement in, and removal from, the ASAT program. Thus, such a claim against defendants must fail as a matter of law. Accordingly, it is recommended that Mills's procedural due process claim be dismissed.

### 3. False Accusations

Mills contends that he was discharged from the ASAT program based on false accusations that stemmed from retaliation for the filing of grievances. The Second Circuit has repeatedly held that the issuing of false charges by a corrections officer against an inmate does not constitute a per se constitutional violation under § 1983. Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1007) (citing Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)). A false misbehavior report may constitute a constitutional violation when there is more such as "retaliation against the prisoner for exercising a constitutional right." Id. (citing Franco v. Kelly, 854 F.2d 584, 588–90 (2d Cir. 1988)). Further, "[t]he filing of a false report does not, of itself, implicate the guard who filed it in [any] constitutional

17

violations which occur at a subsequent disciplinary hearing." Williams v. Smith, 781 F.2d 319, 324 (2d Cir. 1986).

To state an actionable claim for retaliation under the First Amendment, a prisoner must establish by a preponderance of the evidence that: (1) the speech or conduct at issue was protected; (2) the defendant took adverse action against the plaintiff; and (3) there was a causal connection between the protected speech and the adverse action. Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotation marks and citation omitted); Tafari v. McCarthy, 714 F. Supp. 2d 317, 347 (N.D.N.Y. 2010). In the prison context, "adverse action" is objectively defined as conduct "that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003). "[A]dverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone." Jackson v. Onondaga Cnty., 549 F. Supp. 2d 204, 215 (N.D.N.Y. 2008).

"Types of circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation include temporal proximity, prior good discipline, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives." Barclay v. New York, 477 F. Supp. 2d 546, 588 (N.D.N.Y. 2007) (citations omitted).

> There is no bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship, so courts judge the permissible inferences that can be drawn from temporal proximity in the context of particular cases. However, courts have found that six and eight month gaps between the protected conduct and adverse action were sufficient, while in other circumstances three months was considered too long.

<u>Burton v. Lynch</u>, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009) (internal quotation marks and citations omitted).

Courts must view retaliation claims with care and skepticism to avoid judicial intrusion into matters of prison administration.  <u>Jackson</u>, 549 F. Supp. 2d at 214–15.  Therefore, conclusory allegations alone are insufficient.  <u>Id.</u> at 214 (citing <u>Flaherty v. Coughlin</u>, 713 F.2d 10, 13 (2d Cir. 1983) (explaining that "claim[s] supported by specific and detailed factual allegations . . . ought usually be pursued with full discovery.")).  If the plaintiff establishes these elements, the burden shifts to the defendants to show by a preponderance of the evidence that they would have taken the same action against the plaintiff absent his exercising of the protected conduct.  <u>Graham v. Henderson</u>, 89 F.3d 75, 79 (2d Cir. 1996).

Here, Mills has failed to establish the third prong of the retaliation claim.  Mills made general and conclusory allegations that defendants retaliated against him for his filing of grievances against them but does not allege any facts indicating a causal connection between the filing of grievances and his discharge from the ASAT program.  Moreover, defendants have shown by the preponderance of the evidence, specifically, a documented history of non-compliance with the ASAT program and the ASAT staff, that they would have taken the same action against Mills absent his filing of grievances.  Thus, Mills has failed to establish a retaliation claim against defendants.

Furthermore, prison officials have a legitimate penological interest in protecting inmates' safety.  <u>Salahuddin v. Goord</u>, 467 F.3d 263, 276 (2d Cir. 2006).  Irrespective of Mills's intentions behind making the statements during the group session, Mills incited anger in the other inmates and posed a security threat to the ASAT staff.  Thus, defendants' actions in

issuing charges against Mills were justified by his conduct.  Accordingly, defendants' motion on this ground should be granted.

### D. Double Jeopardy

The Fifth Amendment's Double Jeopardy Clause provides, "[n]o person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb . . . ."  U.S. Const. amend. V.  "Th[is] clause protects individuals from three types of violations:  (1) a second prosecution after acquittal for the same offense; (2) a second prosecution after conviction for the same offense; and (3) multiple punishments for the same offense."  Porter v. Coughlin, 421 F.3d 141, 144 (2d Cir. 2005) (citing United States v. Lopez, 356 F.3d 463, 467 (2d Cir. 2004)).  As for the third type of violation, double jeopardy only prohibits multiple "criminal" punishments for the same offense.  Hudson v. United States, 522 U.S. 93, 102 (1997).  The Second Circuit has held that prison disciplinary proceedings are not criminal in nature for they at most may "change the conditions of an inmate's confinement for purposes of maintaining institutional order and encouraging compliance with prison rules."  Porter, 421 F.3d at 148 (citation omitted).

Here, to the extent that Mills claims that he was subjected to double jeopardy when he was allegedly forced to participate in the ASAT program, such a claim must fail as a matter of law.  First, Mills was not subjected to a second prosecution for any conviction or offense.  Second, ASAT was designed not as a punitive program but as a therapeutic alcohol and substance abuse education and treatment program.  While participation in the program may require compliance with program standards, such participation at most changes the conditions of Mills's confinement for purposes of encouraging compliance with the program

rules.  Thus, it cannot be said that Mills was subjected to multiple criminal punishments by

both incarceration and program assignment.  Third, as discussed supra, Mills was

appropriately assigned to the ASAT program.  Mills was also given the choice to opt out of

the program; yet, he participated in the program and even makes the argument that he was

wrongfully removed from it.  Thus, it cannot be said that Mills was subjected to the ASAT

program in any punitive capacity.  Accordingly, defendants' motion on this ground should be

granted.


## E.  Qualified Immunity

Defendants claim that even if Mills's constitutional claims are substantiated, they are

nevertheless entitled to qualified immunity.  Qualified immunity generally protects

governmental officials from civil liability "insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have

known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d

211, 229–30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 F. App'x 146 (2d Cir. Nov. 10, 2003).

However, even if the constitutional privileges "are so clearly defined that a reasonable

public official would know that his actions might violate those rights, qualified . . . immunity

might still be available . . . if it was objectively reasonable for the public official to believe

that his acts did not violate those rights."  Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d

Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there

would be a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there

is a constitutional violation does a court proceed to determine whether the constitutional

rights were clearly established at the time of the alleged violation.  Aiken, 236 F. Supp. 2d

at 230.  Here, the second prong of the inquiry need not be addressed with respect to Mills's

Fourteenth Amendment due process claim nor Fifth Amendment double jeopardy claim

because, as discussed supra, it has not been shown that defendants violated Mills's Fifth or

Fourteenth Amendment rights.  Accordingly, it is recommended in the alternative that

defendants' motion on this ground be granted and Mills's complaint be dismissed.


### III.  Motion to Appoint Counsel

Courts cannot use a bright-line test in determining whether counsel should be appointed

on behalf of an indigent party.  Hendricks v. Coughlin, 114 F.3d 390, 392–93 (2d Cir. 1997).

As the Second Circuit stated in Hodge v. Police Officers, 802 F.2d 58 (2d Cir. 1986), "the

district judge should first determine whether the indigent's position seems likely to be of

substance."  Id. at 61.  If the claim satisfies that requirement, the court must then consider

> the indigent's ability to investigate the crucial facts, whether
> conflicting evidence implicating the need for cross-examination
> will be the major proof presented to the fact finder, the indigent's
> ability to present the case, the complexity of the legal issues and
> any special reason in th[e] case why appointment of counsel
> would be more likely to lead to a just determination.

Terminate Control Corp. v. Horowitz, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting Hodge,

802 F.2d at 61–62).  That is not to say that all, or indeed any, of these factors are

controlling in a particular case; rather, "each case must be decided on its own facts."

Velasquez v. O'Keefe, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (citing Hodge, 802 F.2d at

61).

Here, as previously discussed, it is recommended that Mills's complaint be dismissed.

Further, the record shows that Mills has been able to present the case and investigate crucial facts as he made a number of court filings in response to defendants' motion for summary judgment:

1. "Letter Motion" requesting sixty days to respond to the motion for summary judgment. Dkt. No. 35.

2. "Motion to Compel" seeking clearer and more complete discovery documents. Dkt. No. 36.

3. "Letter Motion" requesting seventy days to respond to the motion for summary judgment. Dkt. No. 37.

4. "Response in Opposition to Motion for Summary Judgment" consisting of twelve pages of arguments. Dkt. No. 44.

Assuming this action goes to trial and there is a possibility that there will be conflicting evidence implicating the need for cross-examination, "this factor alone is not determinative of a motion for appointment of counsel." Velasquez, 899 F. Supp. at 974. Further, the record reveals that the issues in dispute here, which involve Mills's due process rights and right against double jeopardy, are not overly complex. Finally, this Court is not aware of any special reason why appointment of counsel at this time would be more likely to lead to a just determination of the action. Accordingly, it is recommended that Mills's motion for appointment of counsel at this time be dismissed without prejudice.

## IV. Conclusion

For the reasons stated above, it is hereby:

1. **RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 32) be **GRANTED** as to all defendants and that judgment be entered in favor of all defendants on all claims; AND

2. Further **RECOMMENDED** that Mills's motion for appointment of counsel (Dkt. No. 43) be dismissed without prejudice.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation." N.Y.N.D.L.R. 72.1(c) (citing 28 U.S.C. §636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  January 2, 2013
         Albany, New York

Christian F. Hummel
U.S. Magistrate Judge